UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LARRY KLAYMAN, | ) | CASE NO. 1:09 CV 1459 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| HONORABLE DAVID MILLS, *et al.*, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On June 26, 2009, *pro se* plaintiff Larry Klayman[1], a California resident, filed this diversity declaratory judgment action against Cuyahoga County Domestic Relations Court Magistrate David Mills, and Cuyahoga County Domestic Relations Court Judge Anthony Russo (hereinafter "Judges").  In the complaint, plaintiff alleges the Judges issued orders in his domestic relations court case which violated his constitutional rights.  He asks this court to vacate the domestic relations court orders, remove the Judges from assignment to his cases, and award him monetary damages.

**Background**

---

[1]   Although Mr. Klayman is proceeding *pro se*, he is apparently an attorney licensed to practice in three states, not including Ohio.  *See Klayman v. Luck*, Nos. 91298, 91317, 2008 WL 4885043, n. 2 (Ohio App. 8 Dist. Nov. 13, 2008)

Mr. Klayman states he is the plaintiff in a child custody action that was filed in the Cuyahoga County Domestic Relations Court in 2007, *Klayman v. Luck*, Case No. DR 07 316840 (Cuyahoga Cty Ct. Comm. Pl. filed July 5, 2007).  Mr. Klayman and Ms. Luck were divorced in Virginia in 2003.  *See Klayman v. Luck*, Nos. 91298, 91317, 2008 WL 4885043 (Ohio App. 8 Dist. Nov. 13, 2008).  Mr. Klayman petitioned the Cuyahoga County Domestic Relations Court to register the foreign decree on July 5, 2007, and thereafter filed motions to modify parental rights and responsibilities and to modify child support.  *Id.*  at *1.

Mr. Klayman alleges he has been litigating this matter in the Cuyahoga County Domestic Relations Court for two years, but has not received the result he desires.  He states he is permitted by the Marital Agreement to have telephone contact and visitation with his two minor children.  He claims Ms. Luck has not complied with the terms of this agreement and Magistrate David Mills and Judge Anthony Russo have not enforced the foreign decree.  He indicates he was falsely accused of sexually abusing his children as a pretext to deny him contact with his children. He states he has been cleared of the accusations by the Cleveland Department of Children and Family Services; however, the Domestic Relations Court Judges will not enforce the provision of the decree permitting him to have contact with his children.

Mr. Klayman challenges several decisions made by the Domestic Relations Court. He contends the Judges issued "an illegal order enjoining litigation in another state, Florida, or for that matter in any court, including this federal court, where they have no jurisdiction, brought for abuse of process and other causes of action for the false charges of sexual abuse."  (Compl. at 3.) He claims he initially decided to represent himself in the litigation, but when he discovered his former spouse had retained an attorney from a large law firm, he "retained outside counsel to assist

-2-

him... ."  (Compl. at 4.)  He states that the domestic relations court would not permit him to act as co-counsel.  He alleges the Judges would not permit him to introduce the testimony of a psychological expert because he did not timely file the expert's report, but allowed Ms. Luck to utilize the testimony of an expert witness when her report was similarly late.  He claims the Judges issued improper discovery orders, permitting Ms. Luck to obtain private financial information he claims to be irrelevant to the case.  He states the trial was scheduled for a time when he was unavailable, and key witnesses were unable to attend due to its close proximity to a national holiday.  He indicates he is regularly excluded from conferences which only his co-counsel is permitted to attend.  Mr. Klayman claims the Judges have violated his Fifth, Sixth, and Fourteenth Amendment rights.  He asks that the Magistrate and the Judge be enjoined from continuing to preside over his case, that their orders be vacated and declared to be void, that he be permitted to proceed as co-counsel in his domestic relations case, and that the court award him unspecified monetary damages.

## Analysis

While *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court may dismiss an action *sua sponte* if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction.  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(*citing Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)).  The claims asserted in this action satisfy these criteria.

This Court lacks jurisdiction to entertain this matter.  Federal courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231(1990) and may not entertain an action over which jurisdiction is lacking.

-3-

*See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982).  A plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the court's jurisdiction. Fed.R.Civ.P. 8.  Although Mr. Klayman asserts both diversity of citizenship and federal question jurisdiction, neither of these are present in this case.

Mr. Klayman suggests that subject matter jurisdiction in this action is based on diversity of citizenship under 28 U.S.C. § 1332(a)(1), which vests the federal district courts with jurisdiction in cases of sufficient value between "citizens of different States."  Generally, the amount in controversy alleged in the complaint will suffice to establish jurisdiction, unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount. See Klepper v. First Am. Bank, 916 F.2d 337, 340 (6th Cir.1990).  In this case, however, Mr. Klayman does not specify an amount of damages, and as this is an action against two domestic relations court judges presiding over a custody dispute, it is unlikely that the value of the action would exceed the jurisdictional threshold.  Mr. Klayman has not satisfied his burden to establish the existence of diversity jurisdiction.

Moreover, even if this case met the technical requirements for diversity jurisdiction, federal courts refrain from addressing cases which are in essence domestic relations or child custody disputes. Catz v. Chalker, 142 F.3d 279, 290 (6th Cir. 1998); Firestone v. Cleveland Trust, 654 F.2d 1212, 1215 (6th Cir. 1981)  To determine if a case is in essence a domestic relations case, the court must look to whether the parties are seeking a declaration of marital or parental status, or whether the underlying dispute centers on a question of federal law.  Catz, 142 F.3d at 290.  Mr. Klayman clearly seeks this court's intervention into a child custody and visitation case.  He asks this court to vacate the Domestic Relations Court decree and issue orders in his favor.  The United

-4-

States District Court is not the proper court to hear a domestic relations matter. Mr. Klayman has not established diversity jurisdiction over this matter.

In addition, Mr. Klayman fails to establish federal question jurisdiction. He indicates that this action is filed pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. This statute, however, does not create an independent basis for federal subject matter jurisdiction. *Heydon v. Mediaone of Southeast Michigan*, 327 F.3d 466, 470 (6th Cir. 2003)(citing *Skelly Oil Co. v. Phillips Petroleum*, 339 U.S. 667, 671-72 (1950)). It merely provides the court with discretion to provide a certain type of relief if the plaintiff is entitled to judgment under some other federal statute. *Id.* Therefore, prior to requesting declaratory judgment, Mr. Klayman must supply a well-pleaded complaint which otherwise states a federal question. He has not done so.

Mr. Klayman asserts that the defendants' ruling and decisions in his domestic relations case violated his Fifth, Sixth, and Fourteenth Amendment rights. United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id.* Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994). Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. *Lavrack v. City of Oak Park*, No. 98-1142,

-5-

1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999); *see Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis.  First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding.  *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998); *see Tropf v. Fidelity National Title Insurance Co.*, 289 F.3d 929, 937 (6th Cir. 2002).  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." *Catz*, 142 F.3d at 293.  The Rooker-Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself.  *Coles v. Granville*, 448 F.3d 853, 857-59 (6th Cir. 2006). Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied  in the state action. *Id.*

In the present action, all of Mr. Klayman's claims directly attack the state court's decisions in his domestic relations case.  They concern specific grievances that the law was incorrectly applied to his case, and are clearly predicated on his belief that the state court was mistaken in rendering its decisions against him. Furthermore, Mr. Klayman requests as relief that the state court orders be vacated and their execution enjoined.  Any review of the constitutional claims asserted in this context would require this Court to review the specific issues addressed in

-6-

the state court proceedings against him.  This Court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested.  *Feldman*, 460 U.S. at 483-84 n. 16; *Catz*, 142 F.3d at 293.

To the extent Mr. Klayman seeks to enjoin a pending Domestic Relations Court matter, his request for relief must be denied.  A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present.  *See Younger v. Harris*, 401 U.S. 37, 44-45 (1971).  When a person is a party to an ongoing state action involving important state matters, he or she cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case.  *Watts v. Burkhart*, 854 F.2d 839, 844-48 (6th Cir.1988) If the party to a state action files such a case, *Younger* abstention requires the federal court to defer to the state proceeding.  *Id*; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).  Based on these principles, abstention is appropriate if: (1) state proceedings are on-going; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions.  *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the State." *Younger*, 401 U.S. at 44.

All three factors supporting abstention are present in this case. Matters of child custody are of paramount state interest.  *See Moore v. Sims*, 442 U.S. 415, 435 (1979); *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995); *Zak v. Pilla*, 698 F.2d 800 (6th Cir. 1982); *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212 (6th Cir. 1981); *Parker v. Turner*, 626 F.2d  1 (6th Cir. 1980).

-7-

There are no facts in the complaint suggesting that the Ohio court cannot or will not provide an adequate opportunity for Mr. Klayman to raise his constitutional claims.  Consequently, this court is required to abstain from enjoining the Cuyahoga County Domestic Relations Court proceedings.

    Finally, even if Mr. Klayman could get beyond the fatal defects to his pleading mentioned above, he could not proceed with an action for damages against Magistrate David Mills and Judge Anthony Russo.  Judicial officers are generally absolutely immune from civil suits for money damages.  *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).  They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants.  *Barnes*, 105 F.3d at 1115.  For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116.  *Stump*, 435 U.S. at 356-57.  A judge will be not deprived of immunity even if the action he or she took was performed in error, done maliciously, or was  in excess of his or her authority.  Mr. Klayman cites a number of decisions made by these Judges which he believes to be contrary to Ohio law.  Those decisions were rendered at a time when both defendants were acting in their capacities as domestic relations judges and were clearly within the subject matter of the courts over which they preside.  If his allegations are true, Mr. Klayman's remedy is an appeal of the order to which he objects.  He does not have recourse against the judge for damages in federal court.

**Conclusion**

Accordingly, this action is dismissed.  The court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 8/18/09

---

[2]    28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.